IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REGINALD WAYNE EMERSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 3:20-CV-00059-G (BH) |
| | ) | |
| PAMELA THIELKE, et al., | ) | |
| Defendants. | ) | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the case should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

### I.   BACKGROUND

On January 10, 2020, Reginald Wayne Emerson (Plaintiff), a former inmate in the Texas Department of Criminal Justice (TDCJ) Larry Gist Unit, filed this *pro se* action against several state parole officials based on their roles in a parole revocation decision that was ultimately set aside by a state habeas court. (*See* docs. 3, 21, 22.)[2]

In 1989, Plaintiff was sentenced to thirty-five years imprisonment. *See Ex Parte Reginald Emerson*, WR-89,91792 (Tex. Crim. App. Aug. 14, 2019) ("Court's Recommendation, Findings of Fact, and Conclusions of Law Regarding Applicant's Application for Writ of Habeas Corpus"). He was released on parole on August 22, 2018. (*Id.*) On August 29, 2018, defendant Parole Officer Tiffany Harrison alleged that Plaintiff

---

[1] By *Special Order* No. 3-251, this *pro se* case has been automatically referred for full case management.

[2] The background comes from the allegations in the complaint, Plaintiff's responses to two magistrate judge's questionnaires, and those parts of the state habeas court proceedings susceptible to judicial notice and readily accessible, including the Texas Court of Criminal Appeals' (CCA) mandate and the state habeas court's findings and recommendations to the CCA.

1

violated the terms of his parole. (*See* doc. 3 at 4.)[3] A revocation hearing was held on September 18, 2018, at which defendant Hearing Officer Amber McCharen determined that Plaintiff had violated the terms of his parole, and his parole was revoked on September 21, 2018. (*Id.*)

Plaintiff filed a petition for a writ of habeas corpus in Texas state court. (*Id.*) The state habeas court issued findings, conclusions, and a recommendation that Plaintiff's parole be reinstated. *See Ex Parte Reginald Emerson*, WR-89,91792 (Tex. Crim. App. Aug. 14, 2019) ("Court's Recommendation, Findings of Fact, and Conclusions of Law Regarding Applicant's Application for Writ of Habeas Corpus"). According to those findings, Plaintiff was facing parole revocation charges based upon three charges, only two of which were being seriously pursued by the State: the failure to participate in the electronic monitoring program as directed (which involved the alleged unplugging of the base unit), and being in arrears for amounts of money due towards different parole-related fees and costs. (*Id.*) The state habeas court found that the base-unit-tampering allegation was resolved and cleared within 47 seconds and therefore insufficient to sustain a revocation of parole, and it had been cleared more than two weeks before the date of the revocation hearing. (*Id.*) The state habeas trial court also assailed defendant Parole Officer Ashley Gray's testimony about the base-unit-tampering allegation at the parole revocation hearing, finding that she admitted that she was not assigned to Plaintiff's case and therefore lacked personal knowledge of the facts supporting it. (*Id.*) The state habeas trial court also found that Plaintiff had not been out of custody long enough to justify a revocation of parole based upon a failure to pay arrears. (*Id.*)

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page.

The state habeas trial court found—and the Texas Court of Criminal Appeals (CCA) concurred—that the State failed to prove the alleged rule violations by a preponderance of the evidence. The CCA adopted the state habeas trial court's factual and legal findings that Plaintiff's parole should be re-instated. *See Ex Parte Reginald Wayne Emerson*, WR-89,91792 (Tex. Crim. App. Jan. 7, 2020). Shortly thereafter, Plaintiff filed this lawsuit under 28 U.S.C. 1983. (*See* doc. 3 at 7.) No process has been issued.

## II.   PRELIMINARY SCREENING

At the time he filed this lawsuit, Plaintiff was state prisoner who was then permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening under 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he was permitted to proceed *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. Courts follow the same analysis in determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) as when ruling on a motion to dismiss under Rule 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam). A complaint fails to state a claim

upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[4]

### III. SECTION 1983

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show (1) she has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A.      Eleventh Amendment Immunity**

Plaintiff sues defendant Pamela Thielke in her official capacity as the director of the Texas Department of Criminal Justice Parole Board.  "A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents." *Wilbert v. Quarterman*, 647 F.Supp.2d 760, 771 (S.D. Tex. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

---

[4] When deciding a Rule 12(b)(6) motion to dismiss—and by extension, when screening a case—a court may consider matters susceptible of judicial notice. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *see* Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding."). Federal Rule of Evidence 201 permits a court to take judicial notice of an "adjudicative fact" if the fact "is not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998). "'[A] court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings,' but 'cannot take notice of the factual findings of another court.'" *SB Int'l, Inc. v. P.R. Jindal*, NO. 3:06-cv-1174-G, 2007 WL 1411042, at *1 (N.D. Tex. May 14, 2007) (Fish, C.J.) (quoting *Taylor*, 162 F.3d at 829). To the extent any of the state habeas court's factual findings that are subject to reasonable dispute are referenced, the only judicial notice taken is that the state habeas court said what it said—not the factual accuracy of the findings or statements.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

Eleventh Amendment immunity likewise applies to agencies of the state. *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 144 (Eleventh Amendment immunity applies to all suits brought against "[s]tates and their agencies…regardless of the relief sought.") (citing *Cory v. White*, 457 U.S. 85, 90-91 (1982)). Although Congress has the power to abrogate immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecommns. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curium).

Here, Plaintiff's suit against defendant Thielke in her official capacity as the director of the TDCJ Parole Board is a suit against the State of Texas and accordingly barred by the Eleventh Amendment. *See Caffey v. Johnson*, 883 F.Supp. 128, 134 (E.D. Tex. 1995) (dismissing suit against director of TDCJ in official capacity as barred by the Eleventh Amendment); *see also Littles v. Board of Pardons and Paroles Div.*, 68 F.3d 122

5

(5th Cir. 1995) ("'The Texas Board of Pardon and Paroles, a division of the Texas Department of Criminal Justice, is cloaked with Eleventh Amendment immunity.'") (quoting *McGrew v. Texas Bd. of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir. 1995)).

## B.     Absolute Immunity

"Most circuits, including the United States Fifth Circuit Court of Appeals, have held that, 'parole board members are absolutely immune from suit for their decisions to grant, deny, or revoke parole.'" *Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995) (quoting *Walrath v. United States*, 35 F.3d 277, 281 & n. 2 (7th Cir. 1994)); *see also Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004). Indeed, probation officers "who carry out functions that are adjudicatory in nature, or that have an integral relationship to judicial decision making, are protected by absolute quasi-judicial immunity." *Norman v. Cmty. Supervision & Corr. Dep't*, No. 7:11-CV-023-KA, 2011 WL 1457524, at *1 (N.D. Tex. Mar. 23, 2011), *rep and rec adopted*, No. 7:11-CV-23-O-KA, 2011 WL 1457469 (N.D. Tex. Apr. 15, 2011). Additionally, "[t]he United States Fifth Circuit has also extended absolute immunity to other state employees performing quasi-judicial roles pertaining to the actual denial or revocation of parole before the parole board." *Stokes v. Culver*, Civil Action No. 08-3194, 2008 WL 4724306, at *3 (E.D. La. Oct. 24, 2008) (citing *Farrish v. Miss. State Parole Bd.*, 836 F.2d 969, 973 (5th Cir. 1988); *Brown v. Nester*, 753 F.Supp. 630, 632 (S.D. Miss. 1990)). "The Fifth Circuit has defined a quasi-judicial actor as 'an official who, because of the organization of the government in a particular state, performs the parole board's quasi-judicial duties.'" *Stokes*, 2008 WL 4724306, at *3 (citing *Farrish*, 836 F.2d at 975). The duties may include acting as a judge or a prosecutor in the parole revocation hearing. *See Farrish*, 836 F.2d at 975-76. Parole officers are entitled only to

6

qualified immunity for administrative functions, however. *See Hulsey v. Owens*, 63 F.3d 354, 356 (5th Cir. 1995) (citing *Walter v. Torres*, 917 F.2d 1379, 1383 (5th Cir. 1990)).

### 1. *Paul Kiel James and Brian Long*

Plaintiff's sole allegations against Paul Kiel James and Brian Long appear to be that they voted to revoke his parole despite knowledge of a lack of probable cause to do so. (*See* Doc. 22 at 7, 9.) As noted, the decision to revoke parole is protected by absolute immunity in this circuit. *See Hulsey*, 63 F.3d at 356. Defendants James and Long are therefore entitled to immunity from Plaintiff's claims against them.

### 2. *Ludin Sanders*

Plaintiff's sole allegation against defendant Ludin Sanders appears to be that she issued a warrant for his arrest "when there was no violation." (Doc. 22 at 11.) Even crediting this conclusory allegation, Sanders would still be entitled to absolute immunity. In *Walrath v. U.S.*, 35 F.3d 277, 282 (7th Cir. 1994), the Seventh Circuit considered an identical allegation. It noted that the issuance of an arrest warrant had several key characteristics in common with a judicial act: "it involves the exercise of discretion in applying the law to the facts of a particular case, poses a heightened risk of vexatious litigation, and 'is open to correction through ordinary mechanisms of review.'" *Id.* at 282 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). The *Walrath* court also observed that the allegation of improperly signing a warrant did not involve claims of fabrication of evidence, as the defendant that signed the warrant "did not participate in gathering the evidence which formed the basis of the arrest warrant," but instead made a discretionary decision that probable cause existed that the plaintiff had violated his parole. *Id.* at 282.

The analysis in *Walrath* is persuasive. Plaintiff does not allege that Sanders was involved in the gathering of evidence that formed the basis for the arrest warrant. Because she allegedly only signed off on the arrest warrant, she is absolutely immune from suit. *Id.*

### 3. *Tiffany Harrison*

Plaintiff's claims against Harrison appear to arise from her allegation that he violated the conditions of his parole. Multiple courts have held that an officer's recommendation to initiate parole revocation proceedings is not entitled to absolute immunity—at least if that decision is not discretionary. *See, e.g., Swift*, 384 F.3d at 1192-93 (finding no absolute immunity for parole officers who "request[ed] an order for a revocation hearing based upon falsified and suppressed evidence" where the officers were obligated by state law to report perceived parole violations to a board of parole); *Scotto v. Almenas*, 143 F.3d 105, 112 (2d Cir. 1998) (finding that parole officer was not entitled to absolute immunity for falsely reporting violation of the plaintiff's parole conditions where state law mandated that the officer report parole violations).

It is not clear whether Plaintiff is attempting to make that kind of allegation here. His claim that Harrison alleged that he violated the terms of his parole is vague and lacking in the kind of detail that would support a conclusion that absolute immunity did not apply, and that Harrison's actions violated his constitutional rights. He does not specify the capacity in which Harrison acted, whether she had discretion to act, how she acted, and whether she made any material misrepresentations.

Plaintiff also claims in his questionnaire answers that Harrison unlawfully "violated" his parole and that she "cleared the violation and still procee[ded] to violate parole." (Doc. 22 at 13.) He claims that she did not "establish by a preponderance of

8

credible evidence" that he violated the conditions of his parole. (*Id.*) His claims against Harrison appear to arise from her initiation of the revocation process. To the extent that Plaintiff claims Harrison essentially acted as a prosecutor in presenting the evidence against him, she is entitled to absolute immunity. *See Farrish*, 836 F.2d at 975-76; *see also David v. Rodriguez*, No. 88 CIV 2115 (JFK), 1989 WL 105804 (S.D.N.Y. Sept. 5, 1989) (parole officer who participated in plaintiff's parole revocation hearing by filing the notice of violation and presenting the case for revocation at the preliminary hearing performed adjudicatory functions protected by absolute immunity).

    4.    *Ashley Gray*

Plaintiff alleges that defendant Gray committed perjury both during the investigation leading to the parole revocation hearing and during the hearing itself, violating his due process rights. (Doc. 22 at 15.) He claims that she admitted during the revocation hearing that she was not even assigned to his case and therefore lacked personal knowledge as to the circumstances of the alleged parole violations. (*Id.*)

Generally, witnesses testifying in parole revocation proceedings are entitled to absolute witness immunity. *See, e.g., Holmes v. Crosby*, 418 F.3d 1356, 1259-60 (11th Cir. 2005) (holding that parole officer entitled to absolute immunity from damages based upon testimony offered in parole revocation hearing where officer acting within the scope of his duties); *Schlosser v. Kwak*, No. 3:20-cv-393 (SRU), 2020 WL 4003502, at *10 (D. Conn. July 15, 2020) (noting that "[d]istrict courts within this circuit have extended that [absolute] immunity to government officials' testimony during probation revocation hearing") (citations omitted); *Weikel v. Vorous*, 2018 WL 3866681, at *4 (D. Del. Aug. 14, 2018) ("To the extent Plaintiff's claims against [the parole officer] stem from her testimony at

Plaintiff's revocation hearing, she is entitled to absolute witness immunity."); *Livingston v. Harrod*, Civil Action No. 3:08-CV-P599-H, 2009 WL 2485560, at 3 (W.D. Ken. Aug. 13, 2009) (noting that courts have extended absolute witness immunity to parole officers who testify at parole revocation hearings); *Stokes*, 2008 WL 4724306, at *3; *Oakes v. Mayer*, No. 1:05-CV-356, 2005 WL 2810692, at *2 (W.D. Mich. Oct. 27, 2005) ("Although the Sixth Circuit has not addressed whether a witness in a parole revocation proceeding is also entitled to absolute immunity from suit, other courts have held that absolute immunity extends to witnesses, and specifically, parole officers, who testify in parole revocation hearings."). To the extent Plaintiff's claims against Gray stem from testimony that she offered at the parole revocation hearing, absolute immunity bars them.

Plaintiff also asserts that Gray committed perjury during the investigation preceding the parole revocation hearing. Whether absolute immunity applies to pre-revocation-hearing testimony is unclear. The Fifth Circuit addressed a similar question in *Galvan v. Garmon*, 710 F.2d 214 (5th Cir. 1983), in which a state probation officer caused the arrest and incarceration of a person on probation through a factually-inaccurate motion to revoke probation, which served as the basis for an arrest warrant. The Fifth Circuit found that absolute immunity did not apply and contrasted the defendant's actions from those of a probation officer preparing a presentence report at the direction of a court:

> In *Spauling [v. Nielsen*, 599 F.2d 728 (5th Cir. 1979)] this Court held that federal probation officers preparing and submitting a presentence report in a criminal case are protected by absolute immunity because the report is an integral part of the sentencing process and because the officer acts at the direction of the court in preparing the report. His activity, therefore, is "'intimately associated with the judicial phase of the criminal process.'" *Id.* at 729 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). We find *Spaulding* not controlling in the case at hand. Whereas in *Spaulding* the probation officer was acting at the direction of the court during the presentence report process, in the immediate case the probation officer acted

at her own initiative and at a different phase of the criminal process less intimately associated with the judiciary.

*Galvan*, 710 F.2d at 215.

Subsequently, in *Rehberg v. Paulk*, 566 U.S. 356 (2012), the Supreme Court extended absolute immunity to grand jury witnesses in spite of the fact that certain procedural protections, such as cross examination, are unavailable during grand jury proceedings. The Supreme Court nonetheless held that "civil liability as a deterrent was unnecessary in light of the possibility of criminal liability, and that civil liability could impede the judiciary's ability to obtain evidence." *Schlosser*, 2020 WL 4003502, at *12 (quoting *Rehberg*, 566 U.S. at 367). Based on *Rehberg*, the district court in *Schlosser* undertook an extensive analysis of the applicability of absolute immunity to the warrant affidavit process in the context of probation revocation. *See* 2020 WL 4003502, at *10-12. The court held that absolute immunity applied to claims against the defendant probation officer based upon her affidavit preceding a probation revocation hearing—not just testimony offered at the hearing itself. *Id.* Ultimately, the court determined that these reasons applied with equal force to mandate absolute immunity for warrant affidavit testimony in the pre-revocation process, as state law criminalized perjury in official proceedings and a probation officer's fear of retaliation could dissuade her from providing courts with critical information about individuals under her supervision. *Id.*

Here, the allegations are ultimately too vague and conclusory to warrant a considered exploration as to whether *Galvan* would preclude absolute immunity. Plaintiff does not specify whether Gray acted at the behest of a court or on her own initiative, so it is unclear whether absolute immunity applies bars his claims. Even if it does not, however,

11

Plaintiff's allegations are still too conclusory to support relief. *See Wooten*, 431 F.Supp.3d at 885. He fails to state a claim upon which relief may be granted against Gray.

### 5. Amber McCharen

Finally, Plaintiff sues McCharen—the parole hearing officer—for making "a decision to proceed at the parole revocation hearing after violation [sic] were clear," for not following the procedures of the Board of Parole, for not providing Plaintiff with a full and fair hearing, and for forwarding Plaintiff's paperwork to the "Palestine Region for Brian Long, James Paul Kiel [sic] to over vote the required votes to revoke my parole" despite knowledge that he had been cleared of the violation. (*See* doc. 22 at 19; doc. 21 at 18). The decision to proceed with a parole revocation hearing is akin to a judicial determination to proceed with a hearing. McCharen is entitled to absolute immunity for this decision. *See Scotto*, 143 F.3d at 111 ("Parole officers are entitled to absolute immunity when they perform judicial functions."). Likewise, she is also absolutely immune from the claim that she, in essentially a judicial capacity, did not provide a full and fair hearing. As for Plaintiff's claim related to the forwarding of paperwork, while somewhat unclear, such act appears to be judicial in nature as a continuation of the hearing process that is, presumably subject to discretion, so absolute immunity is appropriate. Finally, as to the allegation that McCharen deviated from accepted practices and procedures, this conclusory allegation is insufficient to state a claim. *See Wooten*, 431 F.Supp.3d at 885. Plaintiff's claims against McCharen are meritless.

## IV. RECOMMENDATION

Plaintiff's claims should be **DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).

**SO RECOMMENDED** on this 17th day of May, 2021.

*IRMA CARRILLO RAMIREZ*
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*IRMA CARRILLO RAMIREZ*
UNITED STATES MAGISTRATE JUDGE